on today's agenda, United States of America v. Robert Franz. Mr. Hark. Good morning, Your Honor. Good morning. And I am Richard Hark on behalf of Mr. Franz. Initially, I would request three minutes rebuttal. That request will be granted. Your Honors have heard many of these motion-suppressed cases. What is unique about this matter with Mr. Franz is the timing of the in-particularity of Agent Nardinger's warrant. We're here today because it's our position that the District Court erred in finding beyond the Bartholomew v. Commonwealth of Pennsylvania case and Leon that once the warrant was in particular and invalid based upon simply reading the warrant, that any good faith test applied under Harry or any of the other cases. Grove v. Ramirez is inapplicable, and it's our position that the Court's analysis should have ended at that point in time. What do we make of Davis? Davis has got such a heavy emphasis on making a judgment about what the deterrent effect of applying the exclusionary rule will be and thoughtfully considering whether it's worth the cost or the bitter pill, as it's put, of excluding evidence. Well, it's our position that you don't get to Davis because Leon is a very specific case that went through many different exceptions to the exclusionary rule when applying it. However, Leon steps back and says there are four considerations that you don't even get to any culpability analysis or deterrent effect or the idea that good evidence seized by good faith officers or bad faith officers seizing the evidence would come in or out of court. Hold on, stick with me for a second, because the idea that I understand, I know you say I'm getting ahead of the game if I think about Davis here, but I understood the Supreme Court to be trying to say in Davis that it's important not to use good faith mistakes by the police as a reason to keep otherwise valid evidence out of a criminal prosecution because there's no gain in that. There's no societal benefit to that. So other than the fact that you can hang a label on this and say it's an invalid warrant, if we step back from labeling and say what happened, what did the law enforcement people do, what is it about the BLM officer's mistake, which the district court viewed as a mistake and said was not ill-motivated in any sense, that would make it make sense to say, okay, everything that happens after that's bad, can't come in? Because Leon says that you don't conduct the analysis. You don't even get to it. Regardless of how Davis says that you look at what the evidence will do, Leon specifically says under the fourth exception, when the warrant is plainly invalid and an objectively reasonable officer reading the warrant as it was given to Mr. Franz would be able to determine that the warrant was clearly invalid. Because Agent Nardinger's warrant, as it was given to Mr. Franz, any other officer would have no idea where they were searching, what they were searching for, and what they were to recover. And it was invalid based on Bartholomew. That's correct. And Johns, Tracy, all the other cases discuss what is a valid warrant or not. That's not the issue. But Judge Jordan, your question as to what the deterrent effect is, more so the issue, and one of the cases discusses it, and that is society in the court's ability to have trained officers read the law and know what the law is. So that even under our Rule 41F argument that the warrant was not properly executed, the issue becomes that these officers were trained, they were counseled by a United States attorney, they were filing these motions under seal. This officer made a mistake. Is there anything that indicates the United States attorney, the assistant United States attorney, said don't give him the copy of the attachment? Absolutely not. Counsel who has been in the case since 2009, and as I have been, there is no suggestion of any impropriety. The record is clear, even for the motion to suppress the anti-trial. These were Agent Nardinger's decisions. In many of the cases, there's cases in the Tenth Circuit and Eighth Circuit that focus on, well, what did the executing officer do? The problem is we have the overlay of these motions to seal both the warrant, the application, that compound the problem, that your honors see in this case, because it happened on two warrants in this case alone, that the systemic nature of this gross negligence that is being created, that is what the courts are seeking to deter. So there's no bad faith here, then you're arguing incompetence. I mean, this was the agent's first rodeo, and he mistakenly believed that because it was sealed he couldn't share it with Mr. Franz. That's what he says on the record. Well, that's the finding by the court, right? That's correct. That's not just what he said. That's what the district court found. Respectfully, I misspoke. That's what Agent Nardinger said, and yes, the district court found. And we don't dispute that. All right, so then that's how do you get away from Herring and Hudson and Davis, then, that that's a classic case of negligence? Because you don't get to it under Leon, because the warrant as it was presented to Mr. Franz is patently invalid. Well, Leon itself is a case which is all about not being too hidebound. You know, Leon says, only in unusual cases in which exclusion will further the purpose of the exclusionary rule. That's language from Leon, should there be exclusion. When I read Leon last night, it goes on to say, the exception we recognize today will also not apply in cases where a warrant may be so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized, that the executing officer cannot reasonably presume it to be valid. But when you say cannot reasonably presume it, you are assuming a state of the world that doesn't exist. The agent did know what it provided for. And it was valid. And the person who issued it did know what it was for. We're dealing with a valid warrant. He didn't provide the information he was obliged to provide. It was presentment that was the problem, not the nature of the warrant itself, right? We don't disagree with that, and that is correct. This is not one of those cases where, whether there was a Frank's hearing or the reasonable suspicion issue, the public trial is presented to the magistrate. The focus, though, still becomes what, as Mr. Franz and Agent Nardiker testified to, was very clear. Mr. Franz invoked his Fourth Amendment right. This is a straight constitutional question. Mr. Franz said, where's the warrant? I want to see it. And he should have been given it. Everybody, there's not a person in this courtroom that disagrees he should have been given Attachment B. The only question that we're wrestling with is, does a reading of Leon require, as you say, that because he wasn't given Attachment B, it's ipso facto a facially invalid warrant that no reasonable officer could have relied on and, therefore, everything that follows has to be suppressed? Or is it a good faith mistake which, in the presentment, which calls into play Leon's language and all the way past Leon up to Davis about good faith errors not being something that ought to bring suppression. That's the issue we're wrestling with, right? But the difficulty is it's not good faith or bad faith. Once the warrant was taken from the magistrate, whether Officer Nardinger scribbled and changed it is the same as whether he ripped the last three pages off and gave it to Mr. Franz. He altered it, but the more considerable issue is here the deterrent effect of the continued mistake that is being perpetuated, not just in Mr. Franz's cases, in his case and cases, on the two out of the three warrants executed in this case, but the mistakes that the motions to seal the warrant are you turning to Herrick? Are you turning, I'm sorry, are you turning to the Herrick? Well, I'm overlaying it because the service of the Herrick warrant was also not done because the motion to seal was filed. And Nardinger's warrant, he specifically testified that the motion to suppress is the motion to seal was filed and I thought I couldn't serve the warrant. So it's not good faith or bad faith. It's trial strategy. And that's where our brief addresses all the issues that these counsels You're saying your complaint goes to actually the motion to seal the warrant. The instructions that the agents are being given and they're being told and that's the gross misconduct or recklessness that they are patently ignoring the language on the front of the warrant under 41FC that specifically says that you have to serve the warrant and it must be given to the defendant. The fact that Agent Nardinger ripped the two pages off the back of the warrant, good faith or bad faith, he altered the warrant. Now you look at what a reasonable officer reading that warrant as it is presented to Mr. Franz. Nobody could determine what they're there for. And that's the issue. That's why you don't get to the good faith or bad faith test or the But where's the pattern of practice here? I don't remember seeing a record that this office was engaged in some sort of constant error or mistake in respect to failing to give attachments that list the items to be seized. There is no record and there's no record made on those issues. But you can look at the two warrants in this case and just this case alone and the court's experience in looking at how many cases are warrants filed where a defendant who may or may not have the wherewithal to proceed and litigate a case such as this with the amount of pre-trial motions that were filed to find the warrant. Why does the government not serve a warrant on a defendant for 31 months and say we can tape it to the door of the computer room where the computer was stored after we searched it? That's a totally different issue than the Nardinger warrant. Correct. It still has to deal with the motions to seal and the systemic practice that is wreaking havoc on what the agents are able to understand and do. Well, that's what I was asking you. What's the evidence of the systemic practice? Frankly, I'm unaware of what you're talking about. Whose misconduct or gross negligence is that? Well, in this case, it would be Harry Franz. You're attributing that to Nardinger. And Agent Hurd when they didn't serve Mr. Franz with that warrant Okay, but in Nardinger's case, it's his first case. He testified under oath and his affidavit, the statements that he placed in his affidavit specifically identified that he's a well-trained officer. We cite it in our reply brief that he went to federal investigatory school. I think we circled back, though, to now the district courts express finding that this was a good faith mistake and nothing more. Well, that's where our concern is that that's what the government wants the court to determine that Bartholomew doesn't apply because this is just a simple mistake. Some of the other circuits make that determination, but it's our position this court is bound on Bartholomew. Well, some of the other circuits don't even have Bartholomew. Well, there is a case, and I'm not sure if it's the Eighth Circuit or Tenth Circuit, that they simply say, well, just because you didn't give them the attachments to the warrant but they were in the car, that's okay too. Well, we haven't said that, so that doesn't matter. But I still don't understand. I appreciate and understand why you're using words like systemic because I think that's excellent advocacy in light of what the Supreme Court wrote in Herring, right, that the Supreme Court's opinion in Herring in response to, I think it was Justice Ginsburg's dissent, and Justice Ginsburg said, you know, look, now we're going to have all these problems where there's carelessness and the computer system isn't updated, et cetera, et cetera. It could be systemic. I understand why you're using that, but you haven't yet shown me anything in this case why this officer, this agent, had some systemic problem or practice in failing to give the attachment to the person upon whom the warrant was being served. And in fact, as Judge Jordan just pointed out, we have a finding by the trial judge that this was an isolated incident. What am I missing? Well, the isolated incident for this one officer. Right. But it's made again in the same case with the next warrant that's served that is filed but not served on Mr. Franz again because of the motion to seal the warrant, so that you're having the errors. Well, but now we have a different analysis there because the government's argument there is under the rule and the language of the rule, we didn't have to serve him with that because he wasn't in custody of the equipment, right? Isn't that their argument? Their argument is to that extent, yes, because we can serve the Internet service provider who has it. So why is that wrong? Why is that argument by the government wrong? Well, because that's not personal service under the rule as stated in the rule. And to take the warrant to the front of the computer or tape it to the outside door of the, whether it's ICE or the Department of Justice computer storage location, that's not service under Rule 41 FC. You have to serve the person, not who's the custodian of the item. Well, let me ask whether, because there's this issue of whether you've preserved your rights with respect to the search warrant that was effected by Agent Hare. Do you want to respond to the assertion that this is coming up for the first time on appeal and that this has been waived? The issue was addressed in our motion to suppress and the district court didn't consider it. The mere fact that we filed the motion and brought up the issue at that point in time, you do not need to file the specific appeal of the district court's decision at that time. I thought it was first raised in the motion for reconsideration. It was stated in the original motion and the motion for reconsideration. I thought the original motion to suppress was about particularity and probable cause, lack of particularity and probable cause. That is correct. Okay. So where is the issue of you waited too long, you didn't properly do this. How is that involved in your first motion? It's on the Herrick warrant. Right, that's the one we're talking about. It goes to the issue of the prejudice to Mr. Franz that we're finding about that there's actually a warrant that's been given to us six weeks before the actual hearing and it was brought up at that point in time and then raised again on reconsideration because Herrick acknowledged, I think, at the time of the motion to suppress hearing that Mr. Franz was not served with the warrant. Okay, and that's... So my recollection was as Judge Hardeman is that this really comes up for the first time on the motion for reconsideration in an argument that Rule 41 and due process are implicated. Is that... We got the facts right? To the best of my recollection, however, if I am wrong, it still does not mean we waived the argument before the district court because it was raised, addressed, and the trial was not for seven or eight months thereafter. But the judge didn't address it on reconsideration. My recollection is the judge said on reconsideration I made no mistake regarding what was raised previously on the suppression issue and this new argument under 41F I'm not going to address. Isn't that what the district court said? I do not read the district court's decision on the reconsideration as that. All right, Mr. Hark, we'll have you back on rebuttal. Thank you. Ms. Friend. Good afternoon, Your Honors. Alicia Friend with the government. May I proceed? You may. Your Honors are correct that this case, the analysis and the outcome of the case are directly controlled by the Supreme Court cases of Herring and Davis and Tracy in the Third Circuit. That's actually the opposite of what Mr. Hark was saying. Even if, as the case law says, there is no good faith exception in this case, which the government would argue that there is, but even assuming that there's no good faith exception, what the Supreme Court is requiring the district courts to do is to conduct a culpability analysis separate and apart from Leon's good faith exceptions and the four delineated issues that Mr. Hark was referencing. So we have to start with the culpability analysis. And what's clear from Davis is that the sole purpose of the exclusionary rule is to deter police misconduct. That's it. It's not an individual remedy. There's no other reason for it. It's solely to deter police misconduct. And what Davis and Herring are requiring... So how can you separate that from good faith, right? I mean, that is a good faith analysis, isn't it? No, not in terms of... Well, you call it a culpability analysis. They call it a good faith analysis. You say tomato, I say tomato. Aren't we talking about the same thing? Not really, because Leon and Herring, where they have... They're not fully synthesized. Leon is difficult, more difficult to apply to this case because the context of that case is completely different. As Your Honor's noted, there's no doubt that at the time of the presentment that the search warrant was sufficient, unlike Leon. And then a good faith analysis goes to whether or not an agent would be able to rely on ratification by a neutral and detached magistrate. But Leon goes further to say that you then have to do the balancing test that Herring and Davis and that line of cases further elaborates. And it takes the language of the balancing test in Leon and it fleshes out what a district court must do and the questions that it must answer. And what the culpability analysis requires is, as you mentioned, that any exclusion would have to result in appreciable deterrence, not just any incremental deterrence. It has to be appreciable and meaningful. And exclusion also has to... Or the benefit of exclusion has to outweigh the cost to society, which, as Your Honor noted, is substantial. I mean, this is highly probative evidence that would be excluded if suppressed. And what's important in Davis is that the court goes on to illustrate two instances where that balancing could not be a way of dealing with exclusion and they're directly applicable to the case. Do you have any case law that makes a distinction of the sort you're saying between a good-faith analysis and a culpability analysis? That is, where a court has said, yeah, you do good-faith stuff, but even if you can't find good faith, there's this separate thing, a culpability analysis, and you go through that. Absolutely. There's a panel in this court, and I can't tell that exact point. Where the court said, even if... When the court said, I believe the language of the court was that although qualifying for good faith would dictate that the exclusionary rule is implied, not qualifying for a good-faith exception does not mean that your evidence is automatically excluded. That's not what Davis and Herring are saying. They say, above and beyond a good-faith analysis, you have to do this culpability analysis because what the Davis court is saying is this is no longer a reflexive application of the exclusionary rule the way that the case law mandated decades ago. What the Supreme Court trend is is that there has to be a much more individualized assessment and a culpability assessment, and it's not an automatic reflex if there is some error, as in this case, which was truly an isolated mistake. And that brings me back to those two instances of Davis. And what Davis said was where there is an objectively reasonable... where an officer objectively reasonably believes that his actions were lawful, then that balancing test can never provide... outweigh the societal consequences. But what's the trial judge to do first? The Leon analysis or the Herring-Davis analysis? Well, usually the Leon analysis and then the culpability analysis because the culpability analysis ends at the end of Leon. But for purposes of this argument, it doesn't matter. Whether or not it survives the good-faith analysis is not the end of the inquiry. The inquiry really is the Herring and the Davis. In this case, don't you find that the failure to provide the attachment is a Bartholomew violation? And isn't that a fourth... Hasn't our court said that that is a Fourth Amendment violation? Well, I believe Bartholomew was referencing a sealed document, and therefore it was not present at the search. Here, the language of the sealing order permitted the agent to serve the search warrant. The search warrant properly incorporated the search warrant attachments. What the district court found below is that... But the agent didn't give the attachments? As a mistake. Not because it was referencing a sealed document that couldn't go to the search itself. No, because not as a mistake. The agent didn't give it because he didn't think he was entitled to give it. Because he made the mistake. He didn't understand that the sealing order... In fact, it's different. It's not because he wasn't allowed to. But my point is, isn't that a Fourth Amendment violation? Under the current law, yes. Under the current law, yes. And then where do we go from there? Where we go from there is, is there any real harm in this case? The government... Well, let me back up and say that the factional analysis that's so telling in this case, the government referenced in its brief the video of the search. And that is very telling about the culpability analysis and whether or not any prejudice really occurred in this case. Agent Narnia is seen on video giving the defendant the search warrant and then the mistake is captured on video. He said, I can't give you the attachments. They have to be sealed. But then what he does is he explains exactly what it is that they're about to search for. And in doing so, he actually... Those are just facts that support the district court's determination that there was an honest mistake and there was no bad faith, right? No bad faith and no culpability in terms of that warrant exclusion. Right. So they're quite critical facts, yes. But I'm still confused, and maybe it's an academic point in this case, but I'm still a little confused as to the order of operation here. Is the trial court supposed to begin with a liaison good faith analysis and if the court finds that the officer acted in good faith, stop and don't suppress? But if the district court finds that the officer acted in bad faith, then the trial judge is supposed to then do a Herring and Davis analysis and see if exclusion can pay its way? I think in a case like this, it doesn't really... There's no need to conduct a lien analysis because Herring is right on point. Let's not forget that in Herring, there was absolutely no warrant whatsoever. And that would clearly fail under a lien analysis. And yet we went for culpability tests. So where a case... So has Herring and Davis been completely supplanted? Do we have lien in sort of an environment that's a subset then of Herring and Davis and that courts shouldn't even be doing a lien analysis anymore? What's the purpose? What's the purpose of what? Yeah, what's the purpose of lien if it's completely subsumed by what you're calling the culpability analysis of Davis? Why go through the bother of saying good faith when you would just say, you know, good faith or not doesn't really matter because what matters is culpability and weighing deterrence. Go straight to that. So are we back to tomato and tomato? I thought a few minutes ago you were telling me, no, no, completely different. Now you're telling me, no, no, what's really the same? The context of the cases are different. So you don't need to go through the construct of a lien analysis in a situation as here where there's no argument that... All right, and when do we go through a lien analysis? In all the cases that follow lien, which is when at the time of the presentment there's an issue, whether it's a mistake of incorporation... All right, so... What, presentment to whom, the magistrate? The magistrate. All right, so you're suggesting that lien remains vitality when the factual dispute or action relates to the affiance presentment to the magistrate. And beyond that, it's a culpability analysis. But isn't Mr... And to add on that, and isn't Mr. Hark arguing that the process that's being used here of sealing these attachments is a Fourth Amendment violation? And it's systematic, and it's systematic. No, because there's two separate issues. One is that the sealing order itself never... It's not an issue where, as in Bartholomew, it's sealed and they can't serve it. The sealing order specifically says, but for the sealing, you can serve the search warrant, and by definition, the search warrant attachments versus the affidavit which is sealed. So the sealing order allows the service of the documents. So there's no systemic abuse, and also as a sign of no evidence of systemic abuse. And then the issue with the Herrick warrant is totally different. And it's not that it was sealed and therefore not supplied. It was that it was rightfully served on the person from whose premises the item was taken. And I don't know... How do you make that argument here? How do you really make that argument without a tongue-in-cheek? Yeah, it seems like an end-runner on the rule, right? It happens all the time. What happens in a situation where there is a search warrant on the cell phone and the person's in local custody? The federal agent will go to a magistrate, they will approve it, and then you serve the attachment on the local agency where the person's held in custody. You can serve it on the Philadelphia Police Department. Well, that might be what you do, but who's to say that that's what 41F says you to do? Well, the rule itself. The plain reading of the rule says that's what you do. There's nothing in the rule that says you have to... What language of the rule? Give a copy of the warrant and a receipt for the property taken to the person from whom, or from the premises, the property was taken. Absolutely. There's nothing in that... And you're saying that the search of a cell phone, which isn't this case, but the search of a cell phone, if another officer had it, that you're going to serve it under 41F on the officer, not the person who owned the cell phone? The agency in whose custody the cell phone was... Well, that's your interpretation of it. It's a remarkable one. So you can take something from somebody, theoretically, even if you had a basic foundation for doing it, but you needed an additional warrant. Once you've got it out of their custody, you don't ever have to tell them what you're doing with it. You can root through their stuff once you've got your hands on it. Well, as of now, the rule states quite clearly that it has to be taken from or given to the person from whose custody it was taken. And there's no additional... Why would the words, or from whose premises? The premises is the custody of the FBI. There's no additional burden for an agent to try to hunt down... You really think that the rule 41F was drawn in contemplation of that factual scenario? You really think that? It was meant to protect other offices in the Department of Justice. We don't want the FBI going over and doing that. It's not meant to protect the property of the person, the person whose property was taken? All I know is that the plain reading in the rule is what it is, and that if the rule wanted to include a further... If they wanted to include a further burden... I mean, that's not... We're getting into a much bigger subject with cell phones, and that's not this case. ...of putting a burden on who the rightful owner is... But wait a minute. I'm trying to get you back to this case. He says he didn't get it for 31 months. And he got it right after... in March, and he was indicted in January. Okay, but... I mean, the agency that had this material, the Bureau of Land Management... Not that they couldn't have cared about the material. They were doing their job, and they notified the FBI that they had this material. But they were after other things. So to give them the 41-F warrant and the receipt, and not give it to Mr. Franz... You don't think that sounds like a strange interpretation of 41-F? I think it sounds like a plain reading of the rule, and more importantly, I think, in this case... How about, does it sound like a strange interpretation? I truly believe that it sounds like an interpretation that's based on the plain language. Because I do think that there would be another level that would be added, that it would have to be given to the rightful owner. What about Bonsall? Bonsall says that in a case where it was the cell phone, I believe the email provider, that they had to only provide the notice to the provider himself. We seem to have so held in Bonsall. Strange, strange though it may be. Are we fighting over something we don't need to fight over? We probably are. Has this been waived? Yes, it's also been waived. Well, opposing counsel said it was not raised for the first time in the motion for reconsideration. He said it was raised before that. Well, I have the motion with me, and I thought it was going crazy because I've read it multiple times. It's not in there. There's not one reference to Rule 41. It doesn't come up until the motion for reconsideration. Okay, now let's assume that you're right on that. If the district court addressed it in denying the motion for reconsideration, then it's not waived. Did the district court address it? No, it was just a summary order saying it was denied. And I think the law is quite clear that the motion for reconsideration is for very limited circumstances and not PCO litigation. Taking a step back into the Leon versus Davis question that we were thinking around earlier, at least one district court in our circuit seems to think that our unreported opinion and right is in conflict with Virgin Islands versus John. Is there a conflict there? I can remember John. In John, I believe the facts were that it was considered wholly. In John, the court said, quote, we have identified four limited circumstances in which a police officer's reliance on a warrant will not be considered objectively reasonable. And then it lays out the four circumstances based on Tracy. The magistrate judge issued the warrants in reliance on deliberately false or reckless false affidavit. Magistrate judges abandoned the role. The warrant was based on an affidavit lacking an issue of probable cause or for where the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized. That's the statement in John. Well, I think that, again, it again is not as on point as Davis and Herring because, again, that case is a situation where the court found that at the time of the presentment that it was invalid and that no reasonable officer should rely on it even with the ratification of the judge. And so in Honig, that ungratefulness that was found by the court then would become a factor in the culpability analysis, which is that conduct needed to be determined and that they didn't want these to encourage, I believe it was sort of wholesale. I believe the issue in that case was that the warrant was so invalid that they wanted to discourage that. But I also believe that there was a strong dissent in that case, and I also believe that case doesn't necessarily follow the later Herring and Davis cases, which really focused in on the culpability analysis. Okay. Okay. All right. Mr. Herring, thank you very much. Mr. Hark? If I may. Thank you. The issue is to address, Your Honor, at page 26 of my brief and joint appendix is Judge Schiller's January 18, 2013, summarily denying my motion for reconsideration. As to both my motions for reconsideration, documents number 35 and 36, so the issue as to the warrant, the service of the warrant, the Herrick warrant was properly before the district court for the district court to determine whether it was during the motion to suppress or a subsequently raised motion prior to trial which was denied. But was the 41F argument made? In documents, and I would say either 35 or 36, but they are addressed at appendix page 26 in our filing, and that's the actual order that is on the document. I would also direct your attention to the numerous letters that were sent dating back to 2010, 11, and 12 for discovery of the Herrick warrant. I would direct your attention to page 399 of the appendix, item number 9, and item number 18, specifically in my discovery request to Assistant United States Attorney Cooper in Alaska. That's all interesting, but how would that bear on what was in front of the district court? The fact that you were having conversations with the government about what you wanted from them, how would that impact whether or not this had properly been preserved as an issue before the district court? It doesn't, but it goes to the language in the case law addressing the actual rule violation because it's our position that it is preserved. These were addressed pre-trial. His Honor denied it. It's raised on appeal. You can't file an interlocutory appeal on a service issue, but I would request your right to address... Let's assume it wasn't waived. Please. The 41F question, assume it wasn't waived. How do you show that your client was harmed? Well, and that's what I was going to say. Either the language of the case law under Hall and Durant is not and but or. Is there a deliberate intentional violation of the rule, and it's our position that there was. They didn't give him the warrant. That's important. There was a deliberate violation of the rule. It was certainly deliberate in the sense that he thought he was not supposed to do it, so he took attachment B off. It was certainly not deliberate in the sense that he was attempting in some fashion to defeat Mr. Franz's rights. Isn't that correct? That's correct, but we're referring to the Hurrick warrant. I'm sorry. With regard to the Hurrick warrant, it's our position that deliberateness is proven simply by the mere fact that there was an overact to not serve the warrant and hide it, and that goes to my statement in the record. Then respond, if you would, to his friend's argument that the plain meaning of Rule 41 says you give it to the person who's got custody, and he didn't have custody. The government had custody, so they gave it to the person that the rule asked you to give it to. Well, two things. There's no evidence who they gave it to in the record. There was never any witness who testified, I received the warrant, Agent Hurrick drafted it, but to where it went, to whom, and at what time is the issue. There's no evidence of it. What there is evidence of is the motion to unseal the Hurrick warrant and then it being provided in discovery sometime in March of 2012, but that's why I bring up and it's attached to all the motions that we were filing for discovery as to all the letters that we were requesting from Mr. Cooper and his friend about any of the electronic discovery and the warrants to gain access. But I would like to address. I'm sorry, I have to interrupt. I didn't hear an answer to Judd Fisher's question, and I was interested in the question and the answer. How was your client harmed by the? He got the information in advance of the trial, it seems. How was he harmed? The due process harm and prejudice he suffered is both at the time a third warrant on January 5th, 2012 is being issued, the government is relying upon the Hurrick warrant and the inventory results, and back in, I can't give a date, at the time of Mr. Franz's sentencing on the underlying Tusk case, the government is commenting in the sentencing memo about prior unindicted conduct, and that's a potential pending pornography charge for which the government was aware, had the inventory of the search consequent to agent hurts servicing the warrant that we had been asking for that was never disclosed. That's the prejudice to him, but also the prejudice goes to all of the discovery motions that were filed within two to three weeks of trial. And this is very important because we did not have the heart warrant. We didn't know what was discovered up until the motion was suppressed in six weeks or so. So we were late in getting an expert to review the government's seizure of Mr. Franz's computer. We filed motions to access the computer. We, it was not permission given. We filed motions to address other evidence that the government had seen from Mr. Franz's house. There are evidentiary issues addressed under the government's motion under rule 807 to admit certain documents into evidence without any foundation. There are other issues based upon the warrant. These are the prejudices Mr. Franz was suffering by fighting two criminal cases at one time while the government is hiding the results of, and the original basis for a search warrant.  I know I'm beyond my time. Very briefly. The prejudicial error of exhibits four and five under both federal preservers. 807 that the blow ups of the unidentified and subsequently they offer to give them to the jurors. I'm sorry, aren't these the ones they offered to give to the government specifically did not want to give them to the jurors. And the trial counsel specifically strategized to blow the items up on actually this machine in a different way. But the idea is this. We objected to those exhibits pre-trial under the government's motion to admit as self-authenticating. His honor made. We're talking about the Denmark things here. That's correct. Isn't it the case that after all kinds of curative instructions after your that there was an acquittal related to one account. By his honor, not the jury. So his honor put the evidence. The jury found for your client on the balance account. The jury found for your client on the image. As to the interstate commerce proof, they didn't make the factual. Yeah, but they found for him even though they had, under your words, seen the magazines. Right. I guess my point is, there was a lot of instructions and there was an acquittal. And it does not look like the jury. I understood and obeyed their job. Your honor is aware under Cunningham that your honor wrote that the prejudice to these types of images. And we don't know if it was the guilty verdict based upon what the images they saw, regardless of whether the government, because as the image number, the two images, the government could not prove of interstate commerce on image number one. And that was our supposition is to the basis for that verdict. But under Cunningham, your honor, the prejudice of the types of images that were, the government sought to present to the jury absent proof of any interstate commerce to get the prejudice through the rest of their case was only two images. I would have to remember at the end of the day, under the deterrent issue, under Narder's warrant. There are only two images in this case. It's not a gun.  Mr. Harkin. We got you. Okay. We got you. I was pointing to the red light. You asked for a few seconds. Pointing to the red light. Okay. We thank counsel for their arguments. Well done. And take the matter under. All right. We'll take it. Here's the people. Tomorrow. I'm going to get that. Yeah. Yeah. How much, did. Yeah.